Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew Bellinger (SBN 222228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff*
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>POWERNATION LLC, a Wisconsin limited liability company,<br><br>Defendant. | Case No. 5:21-cv-00270<br><br>**COMPLAINT FOR TRADEMARK AND TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster"), a Delaware corporation, by and through its undersigned attorneys, files this Complaint against Defendant Powernation LLC ("Defendant" or "Powernation"), a Wisconsin limited liability company, and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for (1) trademark infringement under 15 U.S.C. § 1114, (2) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), (3) trademark dilution under 15 U.S.C. § 1125(c), (4) unfair competition under California Business & Professions Code § 17200 *et seq.*, and (5) California common-law unfair competition.

2.      The Court has original subject matter jurisdiction over the claims in this Complaint for trademark infringement, trade dress infringement, false designation of origin, and trademark dilution pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint for state statutory and common law unfair competition pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendant.  Defendant has marketed, advertised, and promoted its goods in California, including in this Judicial District, via at least its website (www.clutchenergydrink.com) and social media sites (including Facebook and Instagram).  Further, Defendant has sold its energy drinks and other products through its website to buyers in California and in this Judicial District.  Defendant also lists California on its website as one of the states to which Defendant ships its products.  In addition, by committing acts of trademark infringement, trade dress infringement, false designation of origin, trademark dilution, and unfair competition in this Judicial District, including, but

not limited to, by using infringing marks and trade dress in connection with the advertisement, marketing, promotion, and/or sale of products to customers in this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events complained of herein took place in this Judicial District.

## THE PARTIES

5.   Monster is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1 Monster Way, Corona, California 92789.

6.   Monster is informed and believes, and on that basis alleges, that Powernation is a limited liability company organized and existing under the laws of the State of Wisconsin, having a principal place of business at 4201 Chain O Lakes Rd., Eagle River, WI 54521.  Monster is informed and believes, and on that basis alleges, that Powernation sells its energy drinks and products online to buyers in California and in this Judicial District

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.   Monster's Trademarks and Trade Dress

7.   Monster is a nationwide leader in the business of developing, marketing, selling, and distributing ready-to-drink beverages, including energy drinks.

8.   In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, the containers of which all prominently display Monster's now-famous ⚡ ® mark ("Claw Icon Mark"). Images of Monster's flagship and best-selling original MONSTER ENERGY® drink and associated packaging, which displays the Claw Icon Mark are shown below.

-2-

1
2
3
4
5
6
7
8
9
10
11

 

12   9.   In addition to its Claw Icon Mark, since 2002, Monster has

13   consistently used a distinctive trade dress for its packaging, products, and

14   promotional materials that includes the colors green and black in combination

15   with an "M" design in the form of a claw (both with and without the word

16   "Monster") (the "Monster Trade Dress"). Some examples of the Monster Trade

17   Dress are shown above and additional examples are also shown below.

18
19
20
21
22
23
24
25

 

(die cut signage)                    (poster)

26
27
28



(hanging sign)

As shown in these examples, the Claw Icon mark appears in the color green and is displayed against a black background.

10.     Monster is the owner of numerous U.S. Trademark Registrations for marks that incorporate its famous Claw Icon Mark, including in connection with the colors green or green and black.  Monster's U.S. Trademark Registrations include, for example, the following:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable | 5/7/2003 | 11/16/2004 |

-4-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
|  | 3,434,821 | Nutritional supplements | 9/7/2007 | 5/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/7/2007 | 5/27/2008 |
|  | 4,625,118 | Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy; shakes; chocolate energy shakes<br><br>Ready to drink tea and tea based beverages; ready to drink flavored tea, tea based beverages; ready to drink coffee and coffee based beverages; ready to drink flavored coffee and coffee based beverages; ready to | 6/4/2014 | 10/21/2014 |

-5-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | drink chocolate based beverages | | |
|  | 5,580,962 | Nutritional supplements; nutritional supplements for purposes of boosting energy; dietary supplemental drinks in the nature of vitamin beverages<br><br>Sport helmets; video recordings featuring sports, extreme sports and motor sports<br><br>Silicone wristbands in the nature of bracelets; silicone bracelets; jewelry, namely, bracelets and wristbands; lanyard necklace; watches<br><br>Stickers, sticker kits comprising stickers and decals; decals; posters; calendars<br><br>All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags<br><br>Clothing, namely, t- | 5/17/18 | 10/9/18 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | shirts, hooded shirts and hooded sweatshirts; sweat shirts, jackets, pants, bandanas, sweat bands, gloves and motorcycle gloves; headgear, namely, hats and beanies<br><br>Non-alcoholic beverages, namely, energy drinks, sports drinks, and sports and/or energy drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | | |
|  | 5,022,676 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 5/28/2014 | 8/16/2016 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced | 5/7/2003 | 8/29/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
|  | 4,865,702 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 2/2/2015 | 12/8/2015 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 7/27/2010 | 5/17/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 7/28/2010 | 5/17/2011 |
| | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 7/27/2010 | 11/8/2011 |
| | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 3/12/2014 | 4/14/2015 |
| | 3,914,828 | Sports helmets | 4/2/2009 | 2/1/2011 |

11.    Attached hereto as Exhibits 1-13 are true and correct copies of Monster's trademark registrations identified in Paragraph 10 of this Complaint, which are hereby incorporated by reference.  Collectively, Monster's common

-9-

law rights in its Claw Icon Mark and its above-referenced trademark registrations are referred to as the "Asserted Marks."

12.  Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,134,841, 3,434,822, 3,434,821, 3,963,668, 3,963,669, 3,914,828, and 4,625,118 are incontestable.

13.  As a result of Monster's substantial and continuous use of its Claw Icon Mark and Monster Trade Dress, Monster is also the owner of strong common-law rights in its Claw Icon Mark and Monster Trade Dress.

14.  Monster's successful line of MONSTER™ drinks has now grown to include numerous well-known products, which include or have included, for example, the following: original Monster Energy®; Lo-Carb Monster Energy®; Monster Assault®; Monster Energy® Import; Monster Energy Absolutely Zero®; Punch Monster®; Monster Energy Unleaded®; the Juice Monster® line of energy drinks; the Monster Energy Ultra® line of energy drinks; Monster Cuba-Lima®; Ubermonster®; the Monster Rehab® line of tea plus energy drinks; the Java Monster® line of dairy based coffee plus energy drinks; the Muscle Monster® line of energy shakes; Caffé Monster®; Espresso Monster®; the Monster Maxx® line of energy drinks; the Monster Dragon Tea® line of energy drinks; and the Monster Hydro® line of drinks, among others (referred to collectively as "MONSTER line of drinks").

15.  The containers for the MONSTER line of drinks all prominently display Monster's Claw Icon Mark.  The MONSTER family of products has achieved substantial commercial success.  Since 2002, Monster has sold more than 37.2 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER line of drinks have generated over $64 billion in estimated total retail revenues internationally.  Monster sells more than 5 billion cans per year worldwide, more than 2.5 billion of which are sold in the U.S. alone.

/ / /

16.     The MONSTER brand has established itself as the best-selling energy drink brand in the United States.  Monster sells drinks bearing its Claw Icon Mark and Monster Trade Dress in over 370,000 retail outlets in the United States, including convenience stores, gas stations, and grocery stores.

17.     Monster's Claw Icon Mark and Monster Trade Dress are the subject of substantial and continuous marketing and promotion by Monster in connection with its MONSTER line of drinks.  Since Monster launched its MONSTER line of drinks in 2002, over 95% of Monster's marketing for the drinks has featured Monster's green and black trade dress, including in combination with the Claw Icon Mark and/or the word MONSTER.

18.     Since 2002, Monster has spent in excess of $8.5 billion dollars promoting and marketing its MONSTER brand, including the Claw Icon Mark and the Monster Trade Dress.  From 2002 to 2016 alone, Monster spent over $4.6 billion dollars advertising, promoting, and marketing its MONSTER brand, including the Claw Icon Mark and Monster Trade Dress.

19.     Monster's promotional efforts also include—by way of example but not limitation—using and displaying the Claw Icon Mark and Monster Trade Dress on, in, or in connection with widespread distribution of promotional and point-of-sale materials; product samplings; apparel and merchandise; trucks and other vehicles; magazines and other industry publications; Monster's website, social media sites, and other Internet websites; attendance at trade shows; and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.  Some examples of these promotional efforts are further described below.

20.     For example, Monster has distributed millions of point-of-sale marketing items bearing its Claw Icon Mark and Monster Trade Dress.  These point-of-sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.  Below are true and

accurate representative pictures illustrating examples of Monster's point-of-sale materials bearing Monster's Claw Icon Mark and Monster Trade Dress.

 



21.     Monster also widely markets and promotes the Claw Icon Mark and Monster Trade Dress to consumers through clothing sales and giveaways.  Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its Claw Icon Mark and Monster Trade Dress.  Below are true and accurate representative pictures illustrating examples of Monster's apparel bearing Monster's Claw Icon Mark and/or Monster Trade Dress.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12



13        22.    Further, Monster allocates a large proportion of its marketing,

14   advertising, and promotional budget on athlete endorsements and sponsoring

15   athletic competitions and other events.  Monster's marketing and promotional

16   activities include, but are not limited to, sponsorship of professional fighting,

17   including the Ultimate Fighting Championship ("UFC"); basketball; baseball;

18   hockey; NASCAR; Road Racing World Championship Grand Prix ("MotoGP")

19   events; the AMA Supercross Series (as the title sponsor for all 16 series races);

20   and the X Games.  At Monster-sponsored events, Monster's Claw Icon Mark and

21   Monster Trade Dress are prominently promoted at the venues, including on

22   banners and on large transport, support, and hospitality tractor trailers, motor

23   homes, and other promotional vehicles.

24        23.    In addition, Monster also sponsors hundreds of athletes or athletic

25   teams who compete in a wide-variety of sports, including motocross, MotoGP,

26   AMA Superbike, Supercross, World Superbike, surfing, skateboarding,

27   wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile

28   racing, off-road racing, and various classes of NASCAR racing.  When Monster

sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will display certain elements of Monster's brand including, for example, the Claw Icon Mark and/or the Monster Trade Dress.  For example, when Monster sponsors a motorsports athlete, the athlete's vehicle will often be wrapped in black and green with MONSTER branding, including the Claw Icon Mark. Many of the events that the Monster-sponsored athletes and athletic teams compete in are broadcast nationally on television, and the broadcasts display the Claw Icon Mark and/or Monster Trade Dress.

24.    Some examples of Monster's sponsorship activities in connection with athletic and sporting events are shown below.





 

25.    Monster's Claw Icon Mark and Monster Trade Dress also receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.  As of February 2021, Monster's Facebook page has over 25 million "likes"; Monster's YouTube page has over 462 million views; Monster's Twitter page has approximately 3 million followers; and Monster's Instagram page has approximately 7.3 million followers.  Monster's Claw Icon Mark and Monster Trade Dress are displayed on these websites and social media sites.

26.    As a result of Monster's substantial use and promotion of its Claw Icon Mark and Monster Trade Dress in connection with its MONSTER family of products, the mark and trade dress have acquired great value as specific identifiers of Monster's products and serve to identify and distinguish Monster's products from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster's Claw Icon Mark and Monster Trade Dress as distinctive designations of the origin of Monster's drinks, clothing, accessories, and many other products and promotional items.  The mark and trade dress are intellectual property assets of enormous value as symbols of Monster and its quality products, reputation, and goodwill.

/ / /

**B.    Defendant's Activities**

27.    Monster is informed and believes, and on that basis alleges, that Defendant is engaged in the business of producing, distributing, marketing, and/or selling energy drinks and other products.  Defendant owns and operates the website www.clutchenergydrink.com and maintains a variety of social media accounts including Facebook and Instagram.

28.    Without permission or consent from Monster, Defendant has sold, offered to sell, and/or marketed energy drinks and related products bearing a logo consisting of three parallel lines, including in connection with a green and black color scheme, that is confusingly similar to Monster's Claw Icon Mark and Monster Trade Dress.   An example of Defendant's energy drink displaying the infringing mark and trade dress is shown below.



29.    Defendant    sells    its    energy    drinks    on    its    website www.clutchenergydrink.com.  Defendant's website includes an option for the drinks and other products sold by Defendant to be shipped to California.

30.    Defendant's energy drinks are also sold at retail stores, including grocery stores and convenience stores where Monster's energy drinks are also sold.  Examples of Defendant's and Monster's energy drinks sold adjacent each other in the coolers of convenience stores are shown below.

-16-





31.   Defendant's and Monster's products are the same in that both are energy drinks.   As shown in the examples above, Defendant's and Monster's energy drinks also travel in identical channels of trade and are sold on adjacent store shelves.   Defendant's and Monster's energy drinks are also sold and marketed to the same types of customers.  For example, as shown on Defendant's social media sites, much of Defendant's marketing for its energy drinks focuses

/ / /

on sporting activities and athletic events, to which Monster also allocates a large proportion of its marketing budget.

32.    Defendant is clearly aware of Monster and its valuable trademarks and trade dress.  For example, Defendant has posted images on its social media accounts showing Defendant's and Monster's energy drinks being sold adjacent each other in stores.  Below is an exemplary posting from Defendant's Instagram page showing Defendant's and Monster's energy drinks sold adjacent each other in a convenience store cooler.



33.    In addition, on or about September 11, 2020, Monster's counsel sent Defendant a cease and desist letter notifying Defendant of Monster's trademark rights in the Claw Icon Mark and the Monster Trade Dress.  The letter notified Defendant that its activities infringed Monster's intellectual property rights and demanded that Defendant, *inter alia*, cease all use of Monster's marks and trade dress.  Defendant did not respond to that letter.  Monster's counsel sent a follow up letter on October 8, 2020, but Defendant did not respond to that letter either.  Defendant thereafter continued with its infringing activities.

-18-

34.     Upon information and belief, Defendant was aware of Monster and its trademarks prior to committing the infringing acts complained of herein.

35.     Without permission or consent from Monster, Defendant has infringed Monster's Claw Icon Mark and the Monster Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell energy drinks using marks and a trade dress that are confusingly similar to Monster's marks and trade dress.

36.     Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's products and are intended to cause consumers and potential customers to believe that Defendant's business and the products that it offers are associated with Monster or its MONSTER family of products or services, when they are not.

37.     Indeed, Defendant has a duty to avoid confusion with Monster and its marks because Defendant entered the market after Monster.  Nevertheless, Defendant has purposely sold, promoted, marketed, and/or distributed its products in a manner that causes a likelihood of confusion with Monster and its marks and trade dress.

38.     By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's products and services and Defendant's products, and has otherwise competed unfairly with Monster.

39.     Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

40.     Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts of infringement.

/ / /

41.    Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

42.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-41 of this Complaint as though fully set forth herein.

43.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

44.    Monster owns valid and enforceable federally registered trademarks for the Claw Icon Mark, including at least the registrations listed in Paragraph 10 above.

45.    Defendant has used in commerce, without permission from Monster, a colorable imitation and/or confusingly similar mark and trade dress to Monster's Asserted Marks and Monster Trade Dress in connection with the advertising, marketing, and/or promoting of Defendant's energy drinks.  Such use is likely to cause confusion or mistake, or to deceive.

46.    Upon information and belief, Defendant's activities complained of herein constitute willful and intentional infringements of Monster's registered trademarks, and Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's products are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

47.    Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the Claw Icon Mark, and has willfully violated 15 U.S.C. § 1114.

48.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

49.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

**(Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))**

50.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-49 of this Complaint as though fully set forth herein.

51.     This is a claim for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

52.     As a result of the widespread use and promotion of Monster's Claw Icon Mark and Monster Trade Dress, the marks and trade dress have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the marks and trade dress with Monster.

53.     Defendant has infringed Monster's Asserted Marks and Monster Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, marks confusingly similar to Monster's Asserted Marks and using a trade dress confusingly similar to the Monster Trade Dress in connection with Defendant's business and the products offered by Defendant.

54.     Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's products and/or commercial activities, in violation of 15 U.S.C. § 1125(a).

/ / /

55.     Monster is informed and believes, and on that basis alleges, that Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant or the products offered by Defendant are associated with, sponsored by, or approved by Monster, when they are not.

56.     Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the Asserted Marks and Monster Trade Dress, and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1125(a).

57.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

58.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Federal Dilution Under 15 U.S.C. § 1125(c))

59.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-58 of this Complaint as though fully set forth herein.

60.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

61.     Products sold under Monster's Claw Icon Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon Mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark, Monster's Claw Icon Mark is famous, and became so prior to Defendant's acts complained of herein.

62.     Defendant's unauthorized commercial use of its mark and green/black trade dress shown above in connection with Defendant's business and the products offered by Defendant has caused and is likely to continue to cause dilution of the distinctive qualities of Monster's famous Claw Icon Mark and Monster Trade Dress.

63.     Defendant's acts are likely to tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon Mark and Monster Trade Dress, and the quality of products associated therewith.

64.     Monster is informed and believes, and on that basis alleges, that Defendant's acts of dilution have been willful and deliberate.

65.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

66.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

**(Unfair Competition Under California Business & Professions Code § 17200 *et seq.*)**

67.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-66 of this Complaint as though fully set forth herein.

68.     This is an action for unfair competition under California Business & Professions Code § 17200 *et seq.*

69.     By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* / / /

70.     Defendant's acts complained of herein constitute trademark and trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

71.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

72.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-71 of this Complaint as though fully set forth herein.

73.     This is an action for unfair competition under the common law of the State of California.

74.     Defendant's acts complained of herein constitute trademark and trade dress infringement and unfair competition under the common law of the State of California.

75.     By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

76.     Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

77.     Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

/ / /

78.     Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Monster prays for judgment against Defendant as follows:

A.     That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

B.     That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of the registrations listed in Paragraph 10 above;

C.     That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing Monster's Asserted Marks, including the Claw Icon Mark, by infringing the Monster Trade Dress, and by falsely designating the origin of its products;

D.     That the Court render a final judgment that Defendant has willfully violated 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon Mark;

E.     That the Court render a final judgment that Defendant willfully violated California Business and Professions Code § 17200 *et seq.* by committing trademark and trade dress infringement and unfairly competing with Monster;

F.     That the Court render a final judgment that Defendant willfully violated California common law by unfairly competing with Monster;

G.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.     using Monster's Asserted Marks or the Monster Trade Dress, or any other marks or trade dress confusingly similar thereto (including

-25-

Defendant's three line logo and trade dress shown in Paragraph 28 above), in connection with Defendant's business or the goods offered by Defendant, including in connection with the advertising, promoting, manufacture, distribution, or sale of Defendant's goods, and/or using Monster's Asserted Marks or the Monster Trade Dress, or any other marks or trade dress confusingly similar thereto (including Defendant's three line logo and trade dress shown in Paragraph 28 above), in any manner that is likely to create the impression that Defendant's goods originate from Monster, are endorsed by Monster, are sponsored by Monster, are affiliate  with Monster, or are connected in any way with Monster;

  ii. filing any applications for registration of any marks or trade dress confusingly similar to Monster's Asserted Marks or the Monster Trade Dress;

  iii. otherwise infringing any of Monster's Asserted Marks or the Monster Trade Dress;

  iv. diluting the distinctive qualities of the Claw Icon Mark or any of Monster's other trademarks;

  v. falsely designating the origin of Defendant's goods in any manner suggesting that the goods originate from Monster;

  vi. unfairly competing with Monster in any manner whatsoever; and

  vii. causing a likelihood of confusion or injury to Monster's business reputation;

 H. That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

/ / /

I.    That Defendant be required to account for and pay to Monster any and all profits derived by Defendant by virtue of Defendant's acts complained of herein;

J.    That Defendant be ordered to pay over to Monster all damages that Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

K.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

L.    That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code. § 3294;

M.    That Defendant's actions be deemed willful;

N.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

O.    That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing Monster's Asserted Marks or the Monster Trade Dress, or any confusingly similar marks or trade dress, pursuant to 15 U.S.C. § 1118;

P.    That Monster be awarded restitution and disgorgement; and

Q.    That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: February 17, 2021    By: /s/ Matthew S. Bellinger

Steven J. Nataupsky
Lynda J. Zadra-Symes
Matthew S. Bellinger

*Attorneys for Plaintiff*
MONSTER ENERGY COMPANY

-27-

1

## **DEMAND FOR TRIAL BY JURY**

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

3

Monster Energy Company hereby demands a trial by jury on all issues so triable.

4

5

Respectfully submitted,

6

KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8

Dated: February 17, 2021

By: /s/ Matthew S. Bellinger

9

Steven J. Nataupsky
Lynda J. Zadra-Symes
Matthew S. Bellinger

10

11

*Attorneys for Plaintiff*
MONSTER ENERGY COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28